THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHRISTOPHER SADOWSKI,

    Plaintiff,

v.                                                                    C.A. No.

DEPETRO.COM, LLC,

    Defendant.

## COMPLAINT

Plaintiff Christopher Sadowski ("Plaintiff") sues Defendant DePetro.com, LLC ("Defendant"), and alleges as follows:

## THE PARTIES

1. Plaintiff is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey.

2. Defendant is a limited liability company organized and existing under the laws of the State of Rhode Island with its principal place of business located at 130 Larch Road, East Greenwich, RI 02818. Defendant's agent for service of process is John DePetro, 130 Larch Road, East Greenwich, RI 02818.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant because it has maintained sufficient minimum contacts with Rhode Island such that the exercise of personal jurisdiction

over it would not offend traditional notions of fair play and substantial justice.

5. Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendant or its agents reside or may be found in this district. A Defendant "may be found and subject to venue only in the districts where there is personal jurisdiction." Alicea v. LT's Benjamin Records, No. 10-cv-30002-MAP, 2011 U.S. Dist. LEXIS 120601, at *6 (D. Mass. Oct. 6, 2011) (internal quotation marks and citations omitted). "In other words, 'if a court has personal jurisdiction over the Defendants in a copyright infringement action, venue in that court's district is proper.'" McGregor v. In Tune Music Grp., No. 15-62044-CIV-ZLOCH, 2016 U.S. Dist. LEXIS 190302, at *11 (S.D. Fla. July 29, 2016) (quoting Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd., 767 F. Supp. 181, 185 (N.D. Ill. 1991)).

## FACTS

### I. Plaintiff's Business and History

6. Plaintiff is an award-winning photojournalist and is widely published in some of the world's most important newspapers and magazines, including but not limited to, the New York Post, Daily Mail Online, Reader's Digest, USA Today, New York Times, Fox News, CBS News, NBC News, Boston Globe, Boston Herald, Los Angeles Times, Newsweek Magazine, and People Magazine.

7. For the past nineteen (19) years, Plaintiff has been self-employed as a professional photographer who specializes in photo-documenting ordinary life and the human condition.

8. Plaintiff travels throughout the New York, New Jersey, and Connecticut tri-state area taking photographs that tell a story about tragedy, hope, calamity, joy, discord, and renewal.

9. Using state-of-the-art equipment, Plaintiff creates high-end photography licensed by some of the top publishers in this Country. When commissioned for a job, Plaintiff spends countless hours capturing hundreds of photographs and then processing those photographs to

ensure they meet customers' requirements.

10. Plaintiff maintains a commercial website (http://www.csnyphoto.com) which describes the photography services offered by Plaintiff, hosts a sample portfolio of photographs taken by Plaintiff, and invites prospective customers to contact Plaintiff to arrange for a professional photo shoot.

11. Plaintiff owns the photographs and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, one-time license for use of any single photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

**II. The Work at Issue in this Lawsuit**

  *a) The First Photograph*

12. In 2021, Plaintiff created a professional photograph titled "101521immigrants35CS" (the "First Photograph") of people disembarking off a plane. A copy of the First Photograph is displayed below:



*b) The Second Photograph*

13. In 2021, Plaintiff created a professional photograph titled "101521immigrants40CS" (the "Second Photograph") of people forming a line in front of buses. A copy of the Second Photograph is displayed below:



14. The First Photograph and Second Photograph are collectively referred to herein as the "Work."

15. The Work was registered by Plaintiff with the Register of Copyrights on December 31, 2021 and was assigned Registration No. VA 2-288-279. A true and correct copy of the Certificate of Registration pertaining to the Work is attached hereto as **Exhibit "A."**

16. Plaintiff is the owner of the Work and has remained the owner at all times material hereto. The Work was licensed to the *New York Post* and published alongside an article titled "Biden secretly flying underage migrants into NY in dead of night".[1] The foregoing New York Post article (immediately below the Work appearing in the article) credits Plaintiff as the author/creator of the Work – an attribution known in the industry as a "gutter credit":

---

[1] https://nypost.com/2021/10/18/biden-secretly-flying-underage-migrants-into-ny-in-dead-of-night/.

5



Migrants from the southern border arrive at Westchester County Airport.
Christopher Sadowski



The flights have reportedly been happening recently as the Biden administration has been allowing illegal immigrants to stay in the county instead of deporting them.
Christopher Sadowski

**Defendant's Unlawful Activities**

17. Defendant is a news show available online and by radio, focusing on the current

events of the day with an emphasis on news occurring in Rhode Island.

18. Defendant advertises/markets its business primarily through its website (https://depetro.com/), social media (e.g., https://www.facebook.com/JohnDePetroshow, https://twitter.com/JohnDePetroshow, and https://www.instagram.com/johndepetro/), and other forms of advertising.

19. On October 20, 2021 (within the three month window between first publication and Plaintiff's above-referenced copyright registration of the Work), Defendant published the Work on its website (at https://depetro.com/2021/10/video-illegals-flown-to-quonset/):



20. A true and correct copy of screenshots of Defendant's website, displaying the copyrighted Work, is attached hereto as **Exhibit "B."**

21. Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with its website or for any other purpose.

22. Defendant utilized the Work for commercial use – namely, as the main photos

7

included with one of its articles.

23. Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

24. Through his ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff discovered Defendant's unauthorized use/display of the Work in February 2022. Following Plaintiff's discovery, Plaintiff notified Defendant in writing of such unauthorized use. To date, Plaintiff has been unable to negotiate a reasonable license for the past infringement of his Work.

25. All conditions precedent to this action have been performed or have been waived.

## COUNT I – COPYRIGHT INFRINGEMENT

26. Plaintiff re-alleges and incorporates paragraphs 1 through 25 as set forth above.

27. Each photograph comprising the Work is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

28. Plaintiff owns a valid copyright in each photograph comprising the Work, having registered the Work with the Register of Copyrights and owning sufficient rights, title, and interest to such copyright to afford Plaintiff standing to bring this lawsuit and assert the claim(s) herein.

29. As a result of Plaintiff's reproduction, distribution, and public display of the Work, Defendant had access to the Work prior to its own reproduction, distribution, and public display of the Work on its website.

30. Defendant reproduced, distributed, and publicly displayed the Work without

authorization from Plaintiff.

31. By its actions, Defendant infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, and publicly displaying the Work for its own commercial purposes.

32. Defendant's infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Notably, Defendant itself utilizes a copyright disclaimer on its website ("© COPYRIGHT JOHN DEPETRO.") , indicating that Defendant understands the importance of copyright protection and intellectual property rights and is actually representing that it owns each of the photographs published on its website. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage."); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). Defendant clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet.

33. Plaintiff has been damaged as a direct and proximate result of Defendant's

infringement.

34. Plaintiff is entitled to recover his actual damages resulting from Defendant's unauthorized use of the Work and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b)), Plaintiff is entitled to recover damages based on a disgorgement of Defendant's profits from infringement of the Work, which amounts shall be proven at trial.

35. Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

36. Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover his costs and attorneys' fees as a result of Defendant's conduct.

37. Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a. A declaration that Defendant has infringed Plaintiff's copyrights in the Work;

b. A declaration that such infringement is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $150,000.00 for each infringement of the Work;

d. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and

participation with Defendant, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Work or to participate or assist in any such activity; and

g. For such other relief as the Court deems just and proper.

## COUNT II – REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION

38. Plaintiff re-alleges and incorporates paragraphs 1 through 37 as set forth above.

39. As evidenced above, Plaintiff's name appeared in a gutter credit near each photograph comprising the Work identifying Plaintiff as the owner/creator of the Work. The gutter credit qualifies as protectable copyright management information identifying Plaintiff as the owner/creator of the Work.

40. Defendant knowingly and with the intent to enable or facilitate copyright infringement, removed, or altered the copyright management information from the Work in violation of 17 U.S.C. § 1202(b).

41. Defendant committed these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal infringement of Plaintiff's rights in the Work.

42. If Defendant did not remove or alter the copyright management information itself, Defendant caused, directed, and authorized others to commit these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal infringement of Plaintiff's rights in the Work.

43. As a direct and proximate result of Defendant's conduct in removing or altering the foregoing copyright management information, Plaintiff has been damaged.

44. Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no

adequate remedy at law. Pursuant to 17 U.S.C. § 1203(b), Plaintiff is entitled to a permanent injunction prohibiting any further violation of 17 U.S.C. § 1202 by Defendant.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

a. A declaration that Defendant has violated Plaintiff's copyrights in the Work by removing or altering or causing to be removed or altered Plaintiff's copyright management information displayed thereon;

b. A declaration that such violation is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $25,000.00 for each photograph comprising the Work;

d. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5);

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and participation with Defendant, from directly or indirectly further violating Plaintiff's copyrights by further displaying or distributing the Work with its copyright management information removed; and

g. For such other relief as the Court deems just and proper.

**Demand For Jury Trial**

Plaintiff demands a trial by jury on all issued so triable.

Dated:  November 2, 2023                           PLAINTIFF,
                                                   CHRISTOPHER SADOWSKI,
                                                   By & through his attorney,


                                                   /s/      Chip Muller
                                                   Chip Muller, Esq. (#7686)
                                                   MULLER LAW LLC
                                                   47 Wood Avenue
                                                   Barrington, RI 02806
                                                   Telephone:  (401) 256-5171
                                                   chip@mullerlaw.com